# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                                   **No.  13-cr-0980 MCA**
                                              **16-cv-0596 MCA/SMV**

**DONOVAN MUSKETT,**

     **Defendant.**

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 71; CV Doc. 16] ("PF&RD") issued June 2, 2017. On reference by the undersigned, [CV Doc. 15], the Honorable Stephan M. Vidmar, United States Magistrate Judge, recommended denying Defendant Donovan Muskett's 28 U.S.C. § 2255 Motion to Vacate Sentence [CR Doc. 56; CV Doc. 2]. Muskett objected to the PF&RD on June 16, 2017. [CR Doc. 72; CV Doc. 17]. The government neither objected to the PF&RD nor responded to Muskett's objections. On de novo review of the portions of the PF&RD to which Muskett objects, the Court will overrule the objections, adopt the PF&RD, deny Muskett's Motion, and dismiss case number 16-cv-0596 MCA/SMV with prejudice.

## I. Background

On November 6, 2013, Muskett pleaded guilty to Count 3 of an indictment,[1] which charged him with: (1) Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153,

---

[1] Muskett was initially indicted on March 27, 2013. Presentence Report at 3. A superseding indictment was subsequently filed on August 27, 2013. *Id.* Muskett pleaded guilty to Count 3 of the superseding indictment. *Id.*

113(a)(3); (2) Aggravated Burglary, in violation of 18 U.S.C. § 1153 and NMSA 1978, § 30-16-4(A); (3) Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c); and (4) Negligent Child Abuse, in violation of 18 U.S.C. §§ 1153, 13 and NMSA 1978, § 30-6-1(D)(1). Presentence Report ("PSR") at 3. The U.S. Sentencing Guidelines Manual ("Guidelines") imposes a minimum term of imprisonment of 84 months for violation of § 924(c). PSR at 7; Guidelines § 2K2.4.

On March 11, 2014, the Honorable Alan B. Johnson, United States District Judge visiting from the District of Wyoming, sentenced Muskett to 84 months' imprisonment. [CR Doc. 54] at 2. As part of his plea agreement, Muskett waived his right to appeal his conviction and sentence, so long as the sentence did not exceed the statutory maximum. [CR Doc. 46] at 7. The waiver extended to collateral attacks on his conviction and sentence, with the exception of ineffective-assistance-of-counsel claims pertaining to the entry of the plea or the waiver. *Id.* Muskett did not appeal his sentence. The instant case is his first motion under § 2255.

On reference by the undersigned, Judge Vidmar found that Muskett's claim was not barred by procedural default. Judge Vidmar further found that the predicate offense of assault with a dangerous weapon qualified as a crime of violence under the force clause of § 924(c)(3). Because he found that Muskett's predicate offense qualified as a crime of violence irrespective

of the residual clause of § 924(c)(3), Judge Vidmar found that his conviction under § 924(c) was not improper.  He recommended that Muskett's motion be denied.  [Doc. 16].[2]

## II. Motions under § 2255 and *Johnson II*

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court . . . to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States* ("*Johnson II*"), 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called "residual clause" of the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B),[3] was unconstitutionally vague.  The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one
> year . . . that —
> (i) has as an element the use, attempted use, or threatened use of
> physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or
> otherwise involves conduct that presents a serious  potential risk of
> physical injury to another*.

*Id.* (emphasis added).  The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves."  *Johnson II*, 135 S. Ct. at 2557. That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement

---

[2] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, case number 16-cv-0596 MCA/SMV.
[3] Throughout this opinion, I use the term "ACCA" to refer to § 924(e).

by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson II* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

Muskett, however, was not sentenced under § 924(e), nor did he claim he was. He was convicted—and subject to a minimum term of imprisonment—under § 924*(c)*. Conviction under that provision results where "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." § 924(c)(1)(A). Like the definition of "violent felony" in § 924(e)(2)(B), the definition of "crime of violence" in § 924(c)(3) contains a residual clause, italicized below:

> [T]he term "crime of violence" means an offense that is a felony and—
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

§ 924(c)(3). The Supreme Court has not ruled on whether *Johnson II* applies to invalidate the residual clause of § 924(c). The issue has divided the circuit courts. *See Lloyd v. United States*, 2016 WL 5387665, at *3 (D.N.M. Aug. 31, 2016) (collecting cases). It is presently on appeal before the Tenth Circuit, *United States v. Hopper*, No. 15-2190.

### III. Judge Vidmar found that Muskett's conviction was not improper and recommended that his motion be denied.

Muskett's conviction under § 924(c) was based on two predicate offenses:[4] New Mexico aggravated burglary, NMSA 1978, § 30-16-4, and federal assault with a dangerous weapon, 18 U.S.C. § 113(a)(3). His conviction was based on a determination that one or both of those offenses qualified as a "crime of violence" under § 924(c)(3).

Muskett argued that the residual clause of § 924(c) mirrored the residual clause of § 924(e)(2)(B). *See* [Doc. 2] at 3–6. He contended the Supreme Court's holding in *Johnson II* (i.e., that the ACCA's residual clause was unconstitutionally vague) applied equally to the residual clause in § 924(c). *Id.* He next argued that the predicate offenses on which his § 924(c) conviction relied could have qualified as crimes of violence *only* under that provision's residual clause. *Id.* at 6–10. Therefore, he concluded, because the residual clause was unconstitutional in light of *Johnson II*, and there was no other basis on which his predicate offenses could qualify as

---

[4] Conviction under § 924(c) does not require that the defendant actually have been convicted of the predicate crime of violence. It requires only that a firearm be carried "during and in relation to any crime of violence" "for which the person *may be prosecuted*." § 924(c)(1)(A). In Muskett's case, he was charged with aggravated burglary and assault with a dangerous weapon, but those counts were ultimately dismissed as part of his plea agreement. PSR at 3; [CR Doc. 54] at 1.

5

crimes of violence, his § 924(c) conviction should be vacated.  *Id.* at 12.  He also argued that his

waiver of the right to collaterally attack his conviction and sentence should not bar relief.  *Id.*

at 10–11.

The United States argued that Muskett's claim was procedurally barred because he did

not raise the issue on direct appeal and could not demonstrate either good cause or actual

innocence.  [Doc. 7] at 4–6.  It further argued that, even if Muskett's claim were not procedurally

barred, his conviction under § 924(c) stands even in the wake of *Johnson II*.  The government

contended that *Johnson II* did not invalidate the residual clause of § 924(c).  *Id.* at 7–11.  And,

even if it did, Muskett's predicate offense of assault with a dangerous weapon would still qualify

as a crime of violence under the force clause.[5]  *Id.* at 11–16.  Finally, the government contended

that Muskett waived his right to collaterally attack his conviction and requested that the Court

enforce the waiver.  *Id.* at 16–21.

Judge Vidmar found that Muskett's claim was not barred by procedural default.

[Doc. 16] at 6–8.  Proceeding to the merits, he found that his conviction under § 924(c) was not

improper because the predicate offense of assault with a dangerous weapon qualified as a crime

of violence under the force clause of § 924(c)(3), irrespective of that provision's residual clause.

*Id.* at 8–18.  Because he recommended that Muskett's motion be denied on that ground,

Judge Vidmar declined to consider whether *Johnson II* invalidated the residual clause of § 924(c)

or whether Muskett's appellate waiver was valid.

---

[5] The government did not contend that the predicate offense of aggravated burglary could qualify under the force clause.

**A. Judge Vidmar found that Muskett's claim
was not barred by procedural default.**

In general, claims not raised on direct appeal may not be raised on collateral review unless the petitioner can either "show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains," or "show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Hollis*, 552 F.3d 1191, 1193–94 (10th Cir. 2009) (quoting *United States v. Bolden*, 472 F.3d 750, 751–52 (10th Cir. 2006)). Judge Vidmar found that Muskett had shown cause and prejudice for his procedural default. [Doc. 16] at 6–8.

A petitioner has cause for his failure to raise a claim where he shows "that the factual or legal basis for [the] claim was not reasonably available to counsel." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). This standard is satisfied where a Supreme Court decision "explicitly overrule[s] one of [its] precedents," "overtur[ns] a longstanding and widespread practice . . . which a near-unanimous body of lower court authority has expressly approved," or "disapprov[es] a practice [the Court] arguably ha[d] sanctioned in prior cases." *Reed v. Ross*, 468 U.S. 1, 17 (1984). Judge Vidmar found that, prior to *Johnson II*, Muskett's claim that the residual clause of § 924(c) was unconstitutionally vague was not reasonably available to him. [Doc. 16] at 6–7. Then-binding Supreme Court precedent provided that the ACCA's residual clause was *not* unconstitutional. *Id.* (citing *Sykes v. United States*, 564 U.S. 1, 15 (2011) (holding that the ACCA's residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law" (internal quotation marks omitted)); *James v. United States*, 550 U.S. 192, 210 n.6 (2007)). *Johnson II* expressly overruled

this precedent. *Id.* at 7 (citing *Johnson*, 135 S. Ct. at 2563). It provided a novel legal basis on which Muskett could bring his claim, one that was not previously reasonably available to him. Judge Vidmar therefore found that Muskett had shown cause for his procedural default. *Id.*

To establish prejudice, a petitioner must show that there is a reasonable probability that, without the alleged error, the result of the proceedings would have been different. *Strickland v. Greene*, 527 U.S. 263, 289 (1999). In this case, Muskett pleaded guilty to using a firearm during the commission of a crime of violence. *See* [CR Doc. 54] at 2. Muskett's conviction was based on the parties' understanding that his predicate offenses constituted "crimes of violence" under § 924(c). Judge Vidmar found that if, as Muskett contended, his predicate offenses no longer met the definition of "crime of violence" under § 924(c), then his conviction was based on legal error and the outcome of the proceedings would have been different but for this alleged error. [Doc. 16] at 7. He found that Muskett had shown prejudice. *Id.* (citing *United States v. Castillo*, 16-0622 JCH/KRS, [Doc. 15] at 6–7 (D.N.M. Mar. 10, 2017) (finding cause and prejudice excusing procedural default on defendant's § 2255 claim challenging residual clause of § 924(c)); *Wade v. United States*, 2017 WL 1042055, at *2 (C.D. Cal. Mar. 16, 2017) ("If the court mistakenly treated [the predicate offense] as a crime of violence, there is a reasonable probability that, but for the error, [defendant's] sentence would have been different."); *Haynes v. United States*, 2017 WL 634496, at *10 (C.D. Ill. Feb. 16, 2017) (finding that because defendant's conviction under § 924(c) resulted in the imposition of an additional term of imprisonment, "it is obvious that he suffered an actual and substantial disadvantage from these

convictions")).  Judge Vidmar concluded that because Muskett had shown cause and prejudice, his § 2255 motion was not barred by procedural default.[6]  *Id.* at 8.

## B. <u>Judge Vidmar found that the predicate offense of assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) qualified as a crime of violence under the force clause of § 924(c).</u>

The so-called "force clause" of § 924(c)(3) provides that a predicate offense is a crime of violence where it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  § 924(c)(3)(A).  To determine whether a predicate offense qualifies as a crime of violence under the force clause, courts compare § 924(c)(3)(A) with the elements of the underlying offense.  Specifically, courts must determine whether the force required for conviction of the predicate offense is sufficient to satisfy the physical force requirement of § 924(c).

In determining whether a predicate offense satisfies the force clause, courts generally apply the "categorical approach."  *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).  That is, courts look only to the statutory definition of the prior offense, while ignoring the particular facts of the case.  *Id.*  At base, courts must determine whether the least culpable conduct criminalized by the underlying offense—here, the least amount of force required to sustain a conviction for assault with a dangerous weapon under 18 U.S.C. § 113(a)(3)—meets the physical force requirement of the force clause.  *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) ("Because we examine what the state conviction necessarily involved, not the facts

---

[6] Muskett also argued that his procedural default should be excused because he could show his "actual innocence." [Doc. 14] at 3 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  Because Judge Vidmar found that Muskett had shown cause and prejudice, he declined to additionally consider his actual innocence argument. [Doc. 16] at 8 n.6.

underlying the case, we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized, and then determine whether even those acts are encompassed by [the force clause]." (last set of brackets added) (internal quotation marks omitted)).  In discerning the level of force that gives rise to conviction under the predicate offense, there must be a "*realistic probability*, not a theoretical possibility," that the statute would apply to the conduct contemplated.  *United States v. Rivera-Oros*, 590 F.3d 1123, 1133 (10th Cir. 2009) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

> 1. <u>Judge Vidmar found that assault with a dangerous weapon under § 113(a)(3)
> required the use or threatened use of force capable of causing
> physical pain or injury to another person.</u>

Muskett's underlying offense was assault with a dangerous weapon, 18 U.S.C. § 113(a)(3).  The statute provides, in relevant part:

> **§ 113. Assaults within maritime and territorial jurisdiction**
>
> (a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
> . . . .
>
> (3) Assault with a dangerous weapon, with intent to do bodily harm, by a fine under this title or imprisonment for not more than ten years, or both.

The parties did not dispute that Muskett was charged under § 113(a)(3).  *See*, *e.g.*, [Doc. 1] at 8–9; [Doc. 7] at 11; *see also* PSR at 3.  Applying the categorical approach, Judge Vidmar compared the elements of § 113(a)(3) against the force clause of § 924(c)(3).[7]

---

[7] Judge Vidmar noted that, in undertaking such a comparison, he necessarily first found that 18 U.S.C. § 113(a) was divisible into its eight separate subsections.  [Doc. 16] at 9 n.7 (citing *Mathis v. United States*, 136 S. Ct. 2243, 2249

Judge Vidmar first considered the elements of § 113(a)(3). [Doc. 16] at 10–11. He found that conviction under that provision required proof of (1) assault (2) with a dangerous weapon (3) with intent to do bodily harm. *Id.* at 10. Because the term "assault" was not defined in § 113(a), it took on its common law definition: (1) an attempted battery, or (2) putting another in reasonable apprehension of bodily harm. *Id.* (citing *United States v. McKinney*, 17 F. App'x 808, 811 (10th Cir. 2001); *United States v. Calderon*, 655 F.2d 1037, 1038 (10th Cir. 1981)). The latter method of committing assault required that "the facts and circumstances must [have been] such as to show that [the victim's] subjective apprehension of bodily harm was 'reasonable.'" *Id.* (citing *McKinney*, 17 F. App'x at 811; *United States v. Jojola*, 2000 WL 979107, at *6 (10th Cir. July 17, 2000) (unpublished) (Conviction under § 113(a)(3) required proof that the defendant "used [a dangerous weapon] to intentionally strike or wound [the victim] (or used a display of force that reasonabl[y] caused her to fear immediate bodily harm) and that he acted with the specific intent to do bodily harm.")). Conviction under § 113(a)(3) did not require proof of physical contact. *Id.* (citing *United States v. Duran*, 127 F.3d 911, 915 (10th Cir. 1997) (holding that the offense of "assault by striking, beating or wounding" was not a lesser included offense of assault with a dangerous weapon because the former "require[d] a physical touching")).

---

(2016) (describing the divisibility standard)). Though neither party expressly discussed the statute's divisibility, Judge Vidmar found that the matter appeared to be undisputed. *Id.* Given that Muskett was charged under § 113(a)(3), he found, both parties referred only to subsection (a)(3) and compared the force required under that specific provision (and not any other subsection of § 113(a)) against the force clause of § 924(c). *Id.* (citing [Doc. 1] at 8–9; [Doc. 7] at 11). Therefore, Judge Vidmar employed the categorical approach to determine whether the least culpable conduct criminalized under § 113(a)(3) satisfied the physical force requirement of the force clause. *Id.*

The term "dangerous weapon," he noted, was defined broadly and hinged less on an instrument's innate properties and more on the manner in which it was used. *Id.* at 10–11; [Doc. 14] at 8–9 ("'[A]lmost any object which as used or attempted to be used may endanger life or inflict great bodily harm . . . or . . . is likely to produce death or great bodily harm'" may be a dangerous weapon under certain circumstances. (quoting *United States v. Johnson*, 324 F.2d 264 (4th Cir. 1963))); *see also United States v. Estep*, 138 F. App'x 113, 116 (10th Cir. 2005) (large rock constituted a dangerous weapon for conviction under § 113(a)(3) where defendant had used it to strike victim on her head). Further, conviction under § 113(a)(3) required *use* of a dangerous weapon. *Id.* at 11 (citing *United States v. Bruce*, 458 F.3d 1157, 1164 n.4 (10th Cir. 2005) ("The elements differentiating assault with a dangerous weapon from simple assault are the use of a [dangerous] weapon and the intent to commit bodily harm." (internal quotation marks omitted)); *United States v. Tsosie*, 288 F. App'x 496, 501 (10th Cir. 2008) (defendant's threatening statement of his intent to injure victim using a shank was admissible because it "made more probable the crucial facts" of the attackers' "intent to commit bodily harm, and to do so with a dangerous weapon")).

Judge Vidmar next evaluated the meaning of "physical force" in the force clause of § 924(c). [Doc. 16] at 11–14. In *Johnson v. United States* ("*Johnson I*"), the Supreme Court interpreted the "physical force" requirement of the force clause of § 924(e)(2)(B) to require "*violent* force—that is, force capable of causing physical pain or injury to another person."[8] 559

<hr/>

[8] Judge Vidmar noted that in *Johnson I*, the Court was interpreting the force clause of the ACCA's definition of "violent felony" in § 924(e)(2)(B). [Doc. 16] at 11 n.9 (citing *Johnson I*, 559 U.S. at 138–40). He pointed out that the force clause of the ACCA was distinct from the force clause at issue in this case, under § 924(c)(3). *Id.* However, the language of the force clause in § 924(c)(3) was almost identical to that of the ACCA's force clause, as

U.S. 133, 140 (2010). The Court offered this interpretation in the course of holding that the force required for conviction under a state battery statute—"*any* intentional physical contact, no matter how slight"—was less than the ACCA's physical force requirement. *Id.* at 138 (internal quotation marks omitted). In other words, "physical force" under the force clause meant more than de minimis touching. *See United States v. Harris*, 844 F.3d 1260, 1264–65 (10th Cir. 2017).

Judge Vidmar found that the Tenth Circuit had not specifically addressed whether assault with a dangerous weapon under § 113(a)(3) satisfied the force requirement set out in *Johnson I*. [Doc. 16] at 12. However, it had evaluated other similarly worded assault statutes in light of *Johnson I*'s "physical force" requirement. *Id.* Recently, in *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016), the Tenth Circuit had held that New Mexico aggravated assault with a deadly weapon was categorically a crime of violence under the Guidelines' force clause, even where the underlying assault was committed through "'the use of insulting language toward another impugning his honor, delicacy or reputation.'" 839 F.3d at 1249 (quoting NMSA 1978, § 30-3-1(C)). Crucial to the court's holding was "the other key element" of the provision at issue—that the aggravated assault be committed "with a deadly weapon." *Id.* Conviction under the statute required proof that the defendant used a deadly weapon, i.e., that he employed a

---

well as that of the Guidelines' definition of "crime of violence." *Id.* The definition of "physical force" from *Johnson I*, he found, applied in equal measure to the force clause of § 924(c), as did other ACCA and Guidelines cases interpreting their respective force clauses. *Id.* (citing *United States v. Maldonado-Palma*, 839 F.3d 1244, 1248 (10th Cir. 2016) (relying on interpretation of "physical force" in ACCA case to inform meaning of Guidelines force clause); *United States v. Ramon Silva*, 608 F.3d 663, 671 (10th Cir. 2010) ("Given the similarity in language between the ACCA and [Guidelines], we have occasionally looked to precedent under one provision for guidance under another."); *United States v. Mitchell*, 653 F. App'x 639, 642 (10th Cir. 2016) ("We have consistently applied the same analysis to the career offender provision and the analogous provision of the ACCA where the clauses are virtually identical." (internal quotation marks omitted))). Judge Vidmar found that both ACCA and Guidelines cases were authoritative in interpreting the physical force requirement of § 924(c). *Id.*

weapon "capable of producing death or great bodily harm," in committing the assault. *Id.* at 1250. Thus, even the least culpable conduct giving rise to conviction under the statute "necessarily threaten[ed] the use of physical force." *Id.*

As Judge Vidmar noted, the holding of *Maldonado-Palma* echoed other decisions in the Tenth Circuit holding that assault statutes with a dangerous or deadly weapon requirement satisfied the force clause of the ACCA or Guidelines. [Doc. 16] at 13 (citing *United States v. Ramon Silva*, 608 F.3d 663, 669–71 (10th Cir. 2010) (New Mexico "apprehension causing" aggravated assault—assault committed by "threaten[ing] or engag[ing] in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery"—satisfied the ACCA's force clause); *United States v. Mitchell*, 653 F. App'x 639, 644–45 (10th Cir. 2016) (Oklahoma assault—i.e., attempted battery or threatened imminent battery with an overt act—with a dangerous weapon satisfied the force clause of the Guidelines, because "the additional element of a deadly or dangerous weapon makes an apprehension-causing assault (or an attempted-battery assault) a crime of violence, even if the simple assault would not be"); *United States v. Taylor*, 843 F.3d 1215, 1224 (10th Cir. 2016) (affirming the outcome of *Mitchell* and noting that "regardless of the type of 'dangerous weapon' that is employed by a particular defendant, the use of a 'dangerous weapon' during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause" (internal quotation marks omitted))).

Finally, Judge Vidmar considered the policy rationale supplied by the Tenth Circuit for holding that the assault statutes it had evaluated met the "physical force" requirement of the

force clause.  *Id.* at 13–14.  Even though the assault statutes could be violated without any actual physical contact or violence against the victim, the criminalized conduct "'could always lead to . . . substantial and violent contact, and thus . . . would always include as an element the threatened use of violent force.'"  *Id.* at 13 (quoting *Ramon Silva*, 608 F.3d at 672).  Engaging in threatening conduct toward a victim, with a dangerous or deadly weapon, "could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force."  *Id.* at 13–14 (quoting *Ramon Silva*, 608 F.3d at 672).

Based on this line of case law in the Tenth Circuit, Judge Vidmar found that § 113(a)(3) required the use of *Johnson I*-level physical force.[9]  *Id.* at 14.  Conviction under this provision, he found, required more than mere de minimis force (i.e., attempted physical touching, no matter how slight) because it required that the assault be committed both "with a dangerous weapon" and "with intent to do bodily harm."  *Id.*  As Tenth Circuit precedent made clear, the use of a dangerous weapon in the commission of an assault always constituted the threatened use of

_____

[9] Judge Vidmar noted that the Honorable Lourdes A. Martínez, United States Magistrate Judge, had recently reached the same conclusion.  [Doc. 16] at 14 n.9 (citing *Castillo*, 16-0622 JCH/KRS, [Doc. 15] at 11–15).  He further noted that other courts outside the Tenth Circuit had found that § 113(a)(3) offenses qualified as crimes of violence under the force clause of § 924(c)(3).  *Id.* (citing *United States v. Sutton*, 2016 WL 7042952, at *3 (E.D. Wash. Apr. 26, 2016) ("Unlike statutes that criminalize offensive touching, § 113(a)(3) requires that a person strike, wound, or display force with the intent of causing injury in conjunction with the subjective intent to actually cause bodily harm to the victim.  That level of force is sufficient to meet the threshold of physical force."); *United States v. Scott*, 2017 WL 58577, at *2 (D. Nev. Jan. 4, 2017) ("Either of [the] two ways of committing an assault under § 113(a)(3) qualifies as a crime of violence under § 924(c)(3)(A), because they include as elements the attempt or threat to inflict injury upon the person of another, respectively."); *Owens v. United States*, 2016 WL 4582054, at *4 (E.D. Va. Sept. 1, 2016) (holding that § 113(a)(1), assault with intent to commit murder, satisfied the force clause because, under the common law definition of assault, to be convicted of this offense "the perpetrator must not only demonstrate to the victim a present ability to inflict injury, but must also cause the victim to have a reasonable apprehension of immediate bodily harm")).  He noted that Muskett had cited no case in which a court found that § 113(a)(3) required less than *Johnson I*-level physical force.  *Id.*

violent, physical force because it created the possibility of substantial and violent contact. *Id.* A statute that criminalized the use of a dangerous weapon to "intentionally strike or wound" the victim or to "display . . . force that reasonabl[y] cause[d] [the victim] to fear immediate bodily harm," when the defendant acted with the specific intent to do bodily harm, categorically qualified as a crime of violence under the force clause of § 924(c). *Id.* (quoting *Jojola*, 2000 WL 979107, at *6). Conviction under § 133(a)(3), he concluded, necessarily involved the use or threatened use of physical force—"that is, force capable of causing physical pain or injury to another person." *Id.* (quoting *Johnson I*, 559 U.S. at 140).

## 2. Judge Vidmar found that Muskett's arguments to the contrary were not persuasive.

Judge Vidmar considered but ultimately rejected Muskett's arguments that § 113(a)(3) did not require *Johnson I*-level physical force. [Doc. 16] at 15–18. Muskett argued that § 113(a)(3) did not specify *how* the assault must be carried out, only that it be done with the intent to do bodily harm. [Doc. 2] at 8–9. Physical force in the *Johnson I* sense, he argued, did not necessarily follow from intent to do bodily harm. By way of example, he suggested that a person could be convicted under this statute for mailing anthrax to a victim or poisoning someone's tea. *Id.* at 9–10. Such indirect acts, he claimed, would satisfy the bodily harm element and could result in conviction under § 113(a)(3) but did not entail the "violent force" required of the force clause. *Id.* He argued that § 113(a)(3) focused on the *results* produced by the criminalized conduct, whereas the force clause hinged on the *use* of physical force in committing the conduct. The commission of an assault could result in bodily harm without the

use of violent force; therefore, he concluded, § 113(a)(3) did not necessarily require the use of physical force.

Judge Vidmar acknowledged that, as Muskett pointed out, the Tenth Circuit had held that certain state statutes, despite having a bodily injury element, failed to satisfy the force clause of the Guidelines. [Doc. 16] at 15–16 (citing *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005) (assault statute requiring that the defendant "knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes injury to another person by means of a deadly weapon"); *United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1195 (10th Cir. 2008) (statute criminalizing the "nonconsensual administration of a drug, substance, or preparation" that causes harm to the victim (internal quotation marks omitted))). In those cases, the Tenth Circuit rejected the view that the word "physical" could "relate[] to the effect of the force"; instead, it "must refer to the mechanism by which the force is imparted to the 'person of another.'" *Rodriguez-Enriquez*, 518 F.3d at 1194. Thus, "intentionally exposing someone to hazardous chemicals," for example, would not constitute "physical force." *Id.* at 1195.

Judge Vidmar was not persuaded by Muskett's argument. [Doc. 16] at 16–18. As an initial matter, he found, Muskett ignored the fact that § 113(a)(3) had a dangerous weapon element—that is, conviction under § 113(a)(3) required that the assault be committed "with a dangerous weapon." *Id.* at 16. Muskett had provided no authority to support the proposition that a person could be charged, much less convicted, under § 113(a)(3) for poisoning someone. The factual scenarios he proposed, Judge Vidmar noted, were his own hypotheticals. *Id.* Likewise,

neither *Perez-Vargas* nor *Rodriguez-Enriquez* grappled with an assault statute requiring for conviction the use of a dangerous weapon together with the specific intent to do bodily harm. *Id.*

More importantly, Judge Vidmar continued, after *Perez-Vargas* and *Rodriguez-Enriquez* were decided, the Supreme Court decided *United States v. Castleman*, 134 S. Ct. 1405 (2014). [Doc. 16] at 16–17. In that case, the Court evaluated whether conviction for an offense involving knowingly or intentionally causing bodily injury to another satisfied the force clause of the definition of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). The Court held that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." 134 S. Ct. at 1414. "A 'bodily injury,'" the Court held, "must result from 'physical force'"—whether or not the force was applied directly:

> [A]s we explained in [*Johnson I*], "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." And the common-law concept of "force" encompasses even its indirect application. . . . It is impossible to cause bodily injury without applying force in the common-law sense. Second, the knowing or intentional application of force is a "use" of force. [The defendant] is correct that under *Leocal v. Ashcroft*, the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink[.]" The "use of force" in [the defendant's] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [the defendant's] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim. *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or

> merely accidental conduct"; it did not hold that the word "use" somehow alters the meaning of "force."

*Id.* at 1414–15 (internal citations omitted).

Muskett argued that *Castleman* had no bearing on this case because the Court in that case was evaluating the physical force requirement of a *misdemeanor* "crime of domestic violence," rather than the physical force requirement of a *felony* "crime of violence." *See* [Doc. 14] at 6–8. This distinction mattered, Muskett contended, because the physical force required to satisfy the force clause of a misdemeanor crime of violence was less than *Johnson I*-level "violent force." *Id.* at 6–7. Judge Vidmar agreed that the majority opinion in *Castleman* did not decide whether causation of bodily injury necessarily entailed violent force. [Doc. 16] at 17 (citing *Castleman*, 134 S. Ct. at 1413). *But see Castleman*, 134 S. Ct. at 1417 (Scalia, J., concurring) ("[I]ntentionally or knowingly caus[ing] bodily injury categorically involves the use of force capable of causing physical pain or injury to another person." (second alteration in original) (internal citation and quotation marks omitted)). Nevertheless, he found, the Supreme Court's reasoning with respect to the meaning of "use of force"—namely, its determination that such use of force could be effectuated through direct *or* indirect means—extended to the interpretation of an identically-worded phrase appearing in a similar context (i.e., to the interpretation of "use of force" in the force clause of § 924(c)).[10] [Doc. 16] at 17–18.

---

[10] Judge Vidmar noted that other courts in the Tenth Circuit had reached the same conclusion. [Doc. 16] at 18 n.10 (citing *Miller v. United States*, 2016 WL 7256875, at *5–7 (D. Wyo. Dec. 15, 2016) (unpublished) (Wyoming robbery statute requiring that the defendant inflict bodily injury upon another person in the commission of the crime satisfied the Guidelines' force clause); *Pikyavit v. United States*, 2017 WL 1288559, at *4–7 (D. Utah Apr. 6, 2017) (applying the reasoning of *Castleman* to hold that Utah's assault by prisoner statute qualified under the ACCA's force clause)).

Judge Vidmar concluded that *Castleman* undercut the logic of *Perez-Vargas* and *Rodriguez-Enriquez* and foreclosed Muskett's argument that an assault committed by, for example, mailing anthrax to a victim or poisoning someone's drink would not constitute "physical force." *Id.* at 18 (citing *Castleman*, 134 S. Ct. at 1415 ("The 'use of force' . . . is not the act of 'sprinkl[ing]' the poison; it is the act of employing poison knowingly as a device to cause physical harm.")). He was careful to reiterate that "physical force" in the *Johnson I* sense meant "violent force"—that is, more than de minimis touching, force "capable of causing physical pain or injury to another person." *Id.* (quoting *Johnson I*, 559 U.S. at 140). Assault with a dangerous weapon with the intent to do bodily harm, he continued—whether the use of force was direct or indirect—necessarily entailed the violent force required by *Johnson I*. *Id.* The requirement that the assault and intent to do bodily harm be committed with a dangerous weapon made it so. *Id.* (citing *Taylor*, 843 F.3d at 1220 ("[T]he use of a 'dangerous weapon' during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause.")). Irrespective of whether *Castleman* could be interpreted to mean that *every* underlying statute with an "intentional causation of bodily injury" element necessarily required *Johnson I*-level force, a statute—like § 113(a)(3)—with an additional dangerous weapon requirement did require such force. *Id.* Assault with a dangerous weapon would always entail the threat of force "capable of causing physical pain or injury to another person." *Id.* (quoting *Johnson I*, 559 U.S. at 140).

#### IV. Standard of Review for Objections to Magistrate Judge's PF&RD

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]" *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). To preserve an issue, a party's objections to a PF&RD must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* Moreover, "theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1030–31 (10th Cir. 2001).

#### V. Analysis

Muskett objects to Judge Vidmar's proposed findings and recommended disposition. [Doc. 17]. He contends that § 113(a)(3) does not qualify as a crime of violence under the force clause of § 924(c) because conviction under that provision does not require the use of *Johnson I*-level physical force. The objections will be overruled.

Though Muskett reasserts in his objections the chief argument he raised in his briefing on the motion, the Court will summarize the argument here. Muskett maintains that conviction under § 113(a)(3) could result from conduct that "put another in reasonable apprehension of bodily harm and produced serious bodily injury without use of physical force."[11] [Doc. 17] at 2.

---

[11] At certain places in his objections, Muskett refers to § 113(a)(6) and the language of that subsection (assault "resulting in serious bodily injury") in addition to referring to § 113(a)(3). [Doc. 17] at 2, 3, 4. The sole underlying offense at issue in this case is § 113(a)(3), and the Court limits its analysis to that provision. *See* [Doc. 16] at 9 & n.7.

"Setting off a stink bomb," he offers, "is a clear example of an assault that could constitute a violation of [§ 113(a)(3)] without involving the use, attempted use, or threatened use of 'violent force.'" *Id.* at 3. To support this proposition, Muskett relies on a Tenth Circuit case that held that an assault statute with a bodily injury element did "not necessarily include the use or threatened use of 'physical force.'" *Id.* at 4 (quoting *Perez-Vargas*, 414 F.3d at 1287). Bodily injury refers to the *result* of the conduct, the court reasoned, and the force clause hinges on the *means* by which the conduct was committed. *Id.* (citing *Perez-Vargas*, 414 F.3d at 1285). Muskett argues that the Supreme Court's decision in *Castleman*, decided after *Perez-Vargas*, did not undermine the holding of *Perez-Vargas*. *Id.* at 4–6. He therefore objects to Judge Vidmar's reliance on *Castleman*. *Id.*

As discussed *supra*, Judge Vidmar considered—and rejected—this argument in the PF&RD. [Doc. 16] at 15–18. The Court adopts the reasoning set out in the PF&RD. First, as Judge Vidmar pointed out, Muskett assumes that a person could be convicted under § 113(a)(3) for intentionally, if indirectly, exposing someone to a toxic substance. But he cited no authority in his underlying briefing, and he cites none in his objections, suggesting that someone could be charged, much less convicted, for such conduct under that provision. *See generally* [Doc. 17].

Furthermore, Judge Vidmar did not err in relying on *Castleman*. It is true that the majority opinion in *Castleman* did not decide whether "causation of bodily injury necessarily entails violent force." 134 S. Ct. at 1413. Judge Vidmar acknowledged as much in his PF&RD. [Doc. 16] at 17. *Castleman* instead held that "causation of bodily injury" necessarily requires the degree of physical force necessary to satisfy the force clause of a *misdemeanor* crime of violence

statute. 134 S. Ct. at 1414. However, in reaching this conclusion, the Supreme Court explained that "physical force" encompasses both direct and indirect applications of force. *Id.* at 1414–15. It is a "use of force" to poison someone, and the "use of force" is not the physical action of "sprinkl[ing] the poison," but rather the act of "employing poison knowingly as a device to cause physical harm." *Id.* at 1415. The Court's reasoning on this point is not limited to interpretations of the misdemeanor force clause. To be sure, the force clause of a felony crime of violence requires a greater *degree* of physical force than that of a misdemeanor crime of violence. But the principle in *Castleman* on which Judge Vidmar relied was an evaluation of what it means to "use" physical force in the first instance. And the Court's logic on that point—i.e., that force may be applied directly or indirectly, and the use of physical force lies in the act of causing physical harm and not necessarily in the physical exertion required to create the harm—applies equally to the felony force clause. It contradicts the Tenth Circuit's earlier analysis of this issue in *Perez-Vargas*, and Judge Vidmar did not err in relying on it.[12]

Judge Vidmar did not find that *every* statute with a bodily injury element would necessarily require the use of *Johnson I*-level force. *See* [Doc. 16] at 18. But assault with a dangerous weapon with the specific intent to do bodily harm, whether committed through the direct or indirect application of physical force, necessarily does require *Johnson I*-level force.

_____

[12] Muskett also suggests that a recent Tenth Circuit decision, *United States v. Harris*, "demonstrates the inapplicability of *Castleman* to questions involving the definition of 'force' under *Johnson I* and its progeny." [Doc. 17] at 5–6 (internal citation omitted) (citing *Harris*, 844 F.3d 1260). In *Harris*, the Tenth Circuit noted that "[i]t is important to keep in mind why it was necessary for the Court [in *Johnson I*] to use the language" of "*violent* force." 844 F.3d at 1265. "[T]he Court was differentiating between the force required for the common law offense of battery." *Id.* The Tenth Circuit in *Harris* was simply contextualizing the Supreme Court's earlier use of the phrase "violent force." *See id.* It was noting that "violent force" means something more than "the slightest offensive touching." *Id.* Again, this language goes to the *degree* of force required to constitute *Johnson I*-level force. It does not bear on an analysis of the kind of conduct that qualifies as a use of force.

The Tenth Circuit has repeatedly held that assault statutes with a dangerous or deadly weapon element necessarily require the use of *Johnson I*-level physical force. *See, e.g.*, *Taylor*, 843 F.3d at 1220 ("[T]he use of a 'dangerous weapon' during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause."). Muskett's objections will be overruled.

## VI. <u>Conclusion</u>

Assault with a dangerous weapon with the intent to do bodily harm under § 113(a)(3) requires force, or the threat of force, sufficient to qualify as a crime of violence under the force clause of § 924(c)(3). There is no realistic probability that the statute would be applied to conduct falling outside the scope of the force clause. Therefore, Muskett's conviction under § 924(c) was not improper, irrespective of whether the residual clause of § 924(c)(3) is unconstitutional. His motion under § 2255 will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Muskett's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 72; CV Doc. 17] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 71; CV Doc. 16] are **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant Donovan Muskett's 28 U.S.C. § 2255 Motion to Vacate Sentence [CR Doc. 56; CV Doc. 2] is **DENIED**. Case number 16-cv-0596 MCA/SMV is **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**